IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANTING ZHANG,<br><br>          Plaintiff,<br><br>     v.<br><br>SAFECO INS. CO. OF AMERICA, INC.<br>and LEONARD BAINES,<br><br>          Defendants.<br>_____/ | No. C 12-1430 CW<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION<br>FOR SUMMARY<br>JUDGMENT (Docket<br>No. 26); DENYING<br>PLAINTIFF'S MOTION<br>FOR ADMINISTRATIVE<br>RELIEF (Docket No.<br>35) |

Plaintiff brought this action against Defendant Safeco Insurance Company for breach of contract, breach of the covenant of good faith and fair dealing, and intentional misrepresentation.[1]  Defendant moves for summary judgment on all claims.  Plaintiff opposes the motion and moves for miscellaneous administrative relief.  After considering the parties' submissions and oral argument, the Court grants Defendant's motion and denies Plaintiff's motion.

BACKGROUND

The following facts are undisputed except where otherwise noted.  In February 2009, Plaintiff purchased an insurance policy from Safeco for a residential property that she had recently acquired in Richmond, California. Declaration of Francis Doherty, Ex. A, Deposition of Yanting Zhang 14:2-:7; Declaration of Ronda Ives, Ex. 2, Safeco Policy No. OX5809698, at SAFE00798-99.  The

---

[1] Plaintiff also initially asserted a claim against Leonard Baines for intentional infliction of emotional distress.  The Court dismissed this claim in its May 23, 2013 order.  Docket No. 15, at 9.

policy covered any "direct physical loss to [the] property," subject to certain conditions. Ives Decl., Ex. 2, at SAFE00821.

On June 16, 2009, Plaintiff contacted Safeco to report that the property had been vandalized and file a claim under the policy. Declaration of Leonard Baines ¶¶ 2-3. Three days later, on June 19, Safeco sent a claims examiner, Leonard Baines, to inspect the property and assess the damage from the vandalism. Id. ¶ 4. Baines estimated that it would cost $32,852 to repair the property. Id., Ex. 1, June 2009 Repair Estimate, at SAFE00619-30. On July 6, 2009, Safeco sent Plaintiff a copy of Baines' report and a check for $30,744 to cover the estimated cost of repairs minus Plaintiff's deductible ($1000) and the cost of recoverable depreciation ($1108). Declaration of Kevin G. McCurdy, Ex. 1, Zhang Depo. 107:12-108:19; Ives Decl. ¶ 5.

Unbeknownst to Safeco, on the same day that Baines conducted his inspection, Plaintiff finalized a sale of the property to Jianqin Xie. Zhang Depo. 51:10-52:10; Doherty Decl., Ex. B, Grant Deed, at SAFE00337. Although Plaintiff had initiated the sale on June 11, four days before the vandalism, she did not record the grant deed until the morning of June 19. Grant Deed at SAFE00337. Plaintiff asserts that, when she first called to file a claim, she notified Safeco that the property was in escrow at the time of the vandalism. Zhang Depo. 51:10-52:10; Grant Deed at SAFE00765.

On July 10, 2009, Plaintiff called Safeco with questions about Baines' repair estimate. Ives Decl. ¶ 6, Ex. 3. Specifically, she wanted to know why Baines' estimate did not account for the cost of cleanup and debris removal. Id. She also complained that her contractors thought Baines' estimate was too

2

low.  Id.  The Safeco representative assigned to Plaintiff's claim, Ronda Ives, told Plaintiff to contact Baines directly to discuss her concerns.  Id.  Ives also told her that Safeco would reimburse her for the cost of debris removal when she submitted receipts for this service from a licensed contractor.  Id.

On September 3, 2009, Plaintiff contacted Safeco again, this time seeking compensation for lost rental income.  Id. ¶ 7, Ex. 4. She did not disclose during this conversation that she no longer owned the property and had no authority to rent it to tenants. Id.  Safeco sent Plaintiff a check for $5100 covering three months of lost rental income beginning on June 15, 2009.  Id.

Three months later, on December 3, 2009, Plaintiff contacted Safeco to report that the property had been vandalized again.  Id. ¶ 8.  Speaking with Ives, Plaintiff asserted that the contractor she hired to inspect the property estimated that it would now cost roughly $60,000 to repair all of the damage.  Id.  Because Plaintiff's contractor did not provide a written estimate of the repair costs, Safeco -- still unaware that the property had been sold -- sent Baines to conduct another inspection of the property on December 6.  Id.; Baines Decl. ¶ 7.  His inspection revealed that Plaintiff had not made any repairs to the property since the first vandalism.  Id., Ex. 2, December 2009 Repair Estimate, at SAFE00597.  He concluded that the new damage from the second vandalism would cost an additional $32,230 to repair.  Id.

On December 17, 2009, shortly after Baines completed his second repair estimate, a Safeco investigator interviewed Plaintiff at her home about the vandalism.  Declaration of Michael Dunn ¶¶ 2-3.  Plaintiff told the investigator that she owned the

3

property and conceded that she had not made any repairs to it since the June 2009 vandalism occurred. Id. ¶¶ 4-5, Ex. 1.

Three weeks after the interview, on January 7, 2010, Plaintiff contacted Safeco to report that the property had been vandalized a third time. Ives Decl. ¶ 9, Ex. 6. Five days later, on January 12, Plaintiff reported additional damage from a fourth vandalism. Id. ¶ 10, Ex. 7. Plaintiff did not disclose during either of these conversations that she had sold the property. Id. ¶ 12.

On February 1, 2010, Ives wrote a letter to Plaintiff informing her that Safeco would only cover her losses resulting from the first occurrence of vandalism in June 2009. Id. ¶ 11, Ex. 8. The letter explained that, under the terms of Plaintiff's policy, Safeco was not required to cover losses resulting from "vandalism and malicious mischief" when "the dwelling has been vacant for more than 30 consecutive days immediately before the loss." Id., Ex. 8, at 2. Because the property had been vacant since June 2009, when the first vandalism occurred, Safeco asserted that it was not required to cover the subsequent incidents of vandalism. McCurdy Decl., Ex. 1, 83:12-:15; Ives Decl., Ex. 8, at 2. In reaching this conclusion, Safeco specifically rejected Plaintiff's view that her initial claim should be expanded to cover the three subsequent vandalism incidents, as well; rather, under Safeco's interpretation of the policy, Plaintiff needed to file a separate claim for each incident. Id.

On March 4, 2010, Plaintiff called Ives to discuss Safeco's decision to deny her coverage for any property damage that

4

1 occurred after June 2009.  Id. ¶ 12.  During this conversation,
2 Plaintiff disclosed for the first time that she had sold the
3 property in June 2009.  Id. ¶ 12, Ex. 9.  Plaintiff also indicated
4 that she would speak with Xie, the new owner of the property, to
5 determine whether Xie's insurance policy would cover the losses
6 that occurred after June 2009.  Id., Ex. 9.

7 More than five months later, in August 2010, Plaintiff sent
8 Safeco a repair estimate prepared by Har-Bro of Northern
9 California, a contractor that she hired to examine the property.
10 Id. ¶ 13; Zhang Depo. 90:12-:23.  Har-Bro examined the property on
11 August 12, 2010 and estimated that it would cost $155,790 to
12 repair all of the damage.  Doherty Decl., Ex. F, Har-Bro Estimate,
13 at 27-29.  According to Har-Bro's project manager, Keith Durden,
14 Har-Bro's repair estimate did not distinguish how much of the
15 property damage was attributable to the June 2009 vandalism and
16 how much was attributable to subsequent incidents.  McCurdy Decl.,
17 Ex. 3, Deposition of William Keith Durden, Jr. 15:8-:17.  Although
18 Plaintiff testified during her deposition that she believes she
19 gave Har-Bro pictures of the damage caused by the earlier
20 incidents of vandalism, Zhang Depo. 91:7-:16, Durden says that he
21 never received any such pictures, Durden Depo. 14:12-:17.
22 Plaintiff stated at her deposition that she no longer has these
23 pictures.  Zhang Depo. 91:17-:24.

24 In March 2011, Safeco sent a letter to Plaintiff's then-
25 attorney, Gary Kwasniewski, stating that it was denying
26 Plaintiff's claim for additional repair damages based on the Har-
27 Bro estimate.  Ives Decl. ¶ 13, Ex. 10.  The letter explained that
28 Plaintiff had already received payment for the damage caused by

5

the initial vandalism in June 2009 even though Plaintiff had violated several terms of her policy. Id., Ex. 10, at 4. One of these terms required Plaintiff to "protect the property from further damage, make reasonable and necessary repairs to protect the property, and keep an accurate record of repair expenditures." Id., at 2-3. Another term voided the policy if Plaintiff "intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." Id.

The letter concluded by inviting Plaintiff to submit any additional information that might provide a basis for reconsideration. Id. at 4. Plaintiff, who does not appear to have responded to this invitation, filed this lawsuit one year later.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

6

587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

7

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

## DISCUSSION

I.  Defendant's Motion for Summary Judgment

   A.  Breach of Contract

Plaintiff contends that Safeco breached its insurance contract by failing to compensate her adequately for losses resulting from the repeated incidents of vandalism that occurred between June 2009 and January 2010. Because Plaintiff has failed to produce evidence to support this allegation, Safeco is entitled to summary judgment on this claim.

Plaintiff's insurance policy plainly states that Safeco will not be liable to Plaintiff "for more than the amount of the insured's interest [in the property] at the time of loss." Ives Decl., Ex. 2, at SAFE00824. Plaintiff does not dispute that she ceased to have an insurable interest in the property after June 19, 2009, when the grant deed transferring ownership of the property was recorded. See Doherty Decl., Ex. B, at SAFE00337; Warner v. Fire Ins. Exchange, 230 Cal. App. 3d 1029, 1033 (1991)

8

1 ("[A] seller does not have an insurable interest in property after
2 he or she sells it."). Thus, any losses that occurred after that
3 date -- including any resulting from the December 2009 and January
4 2010 vandalism incidents -- are not covered under the policy.

5 While Plaintiff has offered evidence that she had an
6 insurable interest in the property when it was first vandalized in
7 June 2009,[2] she has not offered evidence that Safeco failed to
8 compensate her for the damage resulting from that incident.
9 Indeed, Plaintiff admitted during her deposition that Safeco sent
10 her a check for roughly $30,000 in July 2009 to cover the
11 estimated cost of repairs. Zhang Depo. 109:12-:16. She also
12 admitted that she never formally disputed Safeco's repair estimate
13 by submitting a conflicting estimate from a licensed contractor,
14 despite Safeco's invitation to do so. Id. 69:20-70:2.

15 Although Plaintiff contends that Har-Bro's August 2010 cost
16 estimate offers proof that Safeco's payment was inadequate, the
17 Har-Bro estimate is insufficient to satisfy Plaintiff's summary
18 judgment burden. Har-Bro issued its estimate more than a full
19 year after the initial vandalism and several months after the
20 subsequent vandalism incidents. Furthermore, Har-Bro's project
21 manager expressly stated during his deposition that Har-Bro did
22 not attempt to determine how much damage was caused by each
23 incident of vandalism. In fact, when Plaintiff asked him to
24 review Baines' June 2009 damage estimate, he made clear that Har-

---

[2] Plaintiff cites several cases to argue that a property owner maintains his or her insurable interest in a property, even when that property is held in escrow. The Court does not discuss or rely on these cases here because "Safeco does not seek summary judgment on the ground that [P]laintiff had no insurable interest in the Property at the time of the first vandalism in June 2009." Reply 1.

9

Bro's estimate differed from Safeco's because the property was in a different condition than when Baines inspected it. Durden Depo. 16:19-17:3. Thus, the Har-Bro estimate does not create a genuine dispute of fact concerning the accuracy of Safeco's June 2009 cost estimate.[3]

Because Plaintiff has not offered any other evidence that Safeco underpaid her for her June 2009 claim or otherwise violated its insurance policy, Safeco is entitled to summary judgment on Plaintiff's breach of contract claim.

B. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff asserts that Safeco breached the covenant of good faith and fair dealing by unreasonably withholding payment for damages caused by the series of vandalism incidents.

The Supreme Court of California has held that, if an insurer does not breach its insurance contract, "there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." Waller v. Truck Ins. Exchange, 11 Cal. 4th 1, 36 (1995); see also Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1151-52 (1990) (holding that the "threshold requirement" for establishing that an insurer breached the covenant of good faith and fair dealing is that "benefits due under the policy must have been withheld"). Accordingly, because Plaintiff has not provided evidence to support her breach of

---

[3] In her opposition brief, Plaintiff refers to a "written estimate" that she provided to Safeco in November 2009. Opp. 10. This appears to be an error. The record does not contain any evidence of a November 2009 estimate and, at the hearing, Plaintiff failed to identify any evidence that such an estimate exists, let alone that she provided a copy of it to Safeco.

10

contract claim, she cannot maintain an action for breach of the implied covenant of good faith and fair dealing.  Safeco's motion for summary judgment is therefore granted with respect to this claim, as well.

### C. Intentional Misrepresentation

Plaintiff's intentional misrepresentation claim is based on the same allegations as her other claims.  She alleges, in essence, that Safeco misrepresented the nature of its insurance coverage by withholding coverage for the property damage caused by the various incidents of vandalism.

To establish liability for intentional misrepresentation, a plaintiff must show "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." Conroy v. Regents of Univ. of Cal., 45 Cal. 4th 1244, 1255 (2009).  Plaintiff here has not provided any evidence of a misrepresentation here, intentional or otherwise.  Indeed, Plaintiff does not even mention the intentional misrepresentation claim in her opposition brief.  What's more, even if Plaintiff had offered evidence of misrepresentation, she has not offered evidence that she suffered damages as a result: Plaintiff received more than $30,000 to repair a property that she no longer owned and, ultimately, declined to use that money to make any repairs.  In short, she has not offered any evidence to show that she was harmed by Safeco's conduct.  Safeco is therefore entitled to summary judgment on Plaintiff's intentional misrepresentation claim.

11

II. Plaintiff's Motion for Administrative Relief

On April 25, 2013, Plaintiff filed an administrative motion requesting a continuance of the trial date, leave to take several depositions, and leave to file a supplemental declaration in opposition to Defendant's summary judgment motion.

Plaintiff's request to continue the trial date is denied as moot in light of Defendant's successful summary judgment motion. Plaintiff's request for leave to take additional depositions is denied because Plaintiff has not explained adequately why she was unable to take these depositions during the designated fact discovery period, which ended more than a month before she filed this motion. Finally, Plaintiff's request for leave to file a supplemental declaration in opposition to summary judgment is denied because Plaintiff fails to identify the proposed content or purpose of such a declaration.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Docket No. 26) is GRANTED and Plaintiff's motion for administrative relief (Docket No. 35) is DENIED. The clerk shall enter judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: 5/1/2013

CLAUDIA WILKEN
United States District Judge

12